IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT HOSKINS, #B-02683, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 15-cv-00280-SMY |
| DUSTIN BOWLES, MAJOR ADAMS, G. JAMES, SCOTT A. HILL, MARK L. HARTMAN, and BART A. LIND, | ) ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Robert Hoskins, a prisoner who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights at Pinckneyville Correctional Center ("Pinckneyville"). In the complaint (Doc. 1), Plaintiff claims that Pinckneyville officials used excessive force against him and denied him medical treatment on June 19, 2014 (Doc. 1, p. 4). When Plaintiff filed an emergency grievance to report the staff misconduct, Pinckneyville officials conspired to retaliate against Plaintiff by issuing him four false disciplinary tickets that resulted in his transfer to Menard, his placement in segregation, and his loss of good conduct credit, among other things (Doc. 1, pp. 4-6). Plaintiff now sues six Pinckneyville officials, including G. James (correctional officer), Dustin Bowles (correctional officer), Scott Hill (correctional officer), Mark Hartman (correctional officer), Bart Lind (correctional officer), and Major Adams (shift supervisor), for violating his rights under the First, Fifth, Eighth, and Fourteenth Amendments and Illinois state law. He seeks monetary damages (Doc. 1, p. 7).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

The complaint is subject to review pursuant to 28 U.S.C. § 1915A(a).  Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the amended complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  The complaint survives preliminary review under Section 1915A.

**The Complaint**

According to the complaint, Plaintiff was involved in a fight at Pinckneyville on June 19, 2014 (Doc. 1, p. 4).  Officer James handcuffed Plaintiff and escorted him to the health care unit, where he refused medical treatment.  While escorting Plaintiff from the health care unit to segregation, Major Adams stopped Plaintiff and asked, "[W]hats (sic) his f*cking problem and what gang is he with?" (Doc. 1, p. 4).  Plaintiff did not respond.  Major Adams and Officer James then beat Plaintiff in the head and body with their fists, until he fell to the ground.  Major Adams instructed Officer James to "get this 'little b*tch out of my face before I kill him'" (Doc. 1, p. 4). Officer James informed Plaintiff that he was being placed under investigation and threatened to "make sure he pa[id] in a bad way," if Plaintiff disclosed any details about the incident.

The following day, Plaintiff filed an emergency grievance regarding the use of excessive force and the subsequent denial of medical care.  Officer Hartman reported to Plaintiff's cell and confirmed his receipt of the grievance.  But he warned Plaintiff not to file any more grievances against Pinckneyville staff.

Officer Bowles also went to Plaintiff's cell later the same day. He told Plaintiff that the grievance was a "game changer" (Doc. 1, pp. 4-5). He assured Plaintiff that it would make his life worse. Officer Bowles then issued Plaintiff a false disciplinary ticket in retaliation for filing the emergency grievance.

On June 23, 2014, Officer Hill approached Plaintiff's cell door. He asked, "[W]hat's up with this grievance I'm hearing about [that] you wrote?" (Doc. 1, p. 5). When Plaintiff did not answer, Officer Hill issued him a second false disciplinary ticket in retaliation for filing the emergency grievance. Officers Bowles and Lind then falsified several additional disciplinary reports that included major charges, in an effort to have Plaintiff transferred from Pinckneyville to Menard. He was, in fact, transferred on June 23, 2014.

On July 9, 2014, Plaintiff received four adjustment committee hearing summaries, which were allegedly prepared by Officers Bowles and Lind. The summaries incorrectly indicated that Plaintiff attended a disciplinary hearing at Pinckneyville on June 23, 2014, the day he transferred to Menard. He did not. Plaintiff received the following punishment on the false disciplinary charges: placement in segregation (a total of twenty-three months); loss of good conduct credits (a total of eighteen months); demotion to C-grade status (a total of twenty-three months); no contact visits (a total of six months); and a security classification upgrade (Doc. 1, pp. 5-6).

He now sues Major Adams and Officer James for the unlawful use of excessive force and denial of medical treatment, in violation of the Eighth Amendment, and the denial of due process and equal protection of the law, in violation of the Fourteenth Amendment (Doc. 1, p. 6). He sues Officers Bowles, Lind, Hill, and Hartman for conspiracy, retaliation, denial of due process, and denial of equal protection under the First, Fifth, and Fourteenth Amendments; he also sues them for malicious prosecution (Doc. 1, p. 7). Plaintiff seeks monetary damages.

## Discussion

A.  **Summary of Claims**

The Court finds it convenient to organize the discussion of the complaint into seven (7) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **COUNT 1:** Defendants James and Adams used excessive force against Plaintiff on June 19, 2014, in violation of the Eighth Amendment (Doc. 1, p. 7);
>
> **COUNT 2:** Defendants James and Adams denied Plaintiff medical care for the injuries they inflicted on June 19, 2014, in violation of the Eighth Amendment (Doc. 1, p. 7);
>
> **COUNT 3:** Defendants James, Adams, Bowles, Hill, Hartman and Lind denied Plaintiff due process of the law by issuing him four false disciplinary tickets, finding him guilty *in absentia*, and punishing him for the rule violations with segregation and revocation of good conduct credit, among other things, in violation of the Fourteenth Amendment (Doc. 1, pp. 6-7);
>
> **COUNT 4:** Defendants James, Adams, Bowles, Hill, Hartman and Lind deprived Plaintiff of equal protection of the law in connection with the June 2014 disciplinary actions taken against him, in violation of the Fourteenth Amendment (Doc. 1, pp. 6-7);
>
> **COUNT 5:** Defendants Bowles, Hill, Hartman and Lind conspired to deprive Plaintiff of his constitutional rights under the First, Eighth, and Fourteenth Amendments (Doc. 1, pp. 6-7);
>
> **COUNT 6:** Defendants Bowles, Hill, Hartman and Lind retaliated against Plaintiff for grieving staff misconduct, by issuing him four false disciplinary tickets, finding him guilty *in absentia*, and punishing him for the rule violations (Doc. 1, pp. 6-7);
>
> **COUNT 7:** Defendants Bowles, Hill, Hartman and Lind maliciously prosecuted Plaintiff, in violation of Illinois state law (Doc. 1, p. 7).

The designation of these claims into separate counts should not be construed as an opinion regarding their merits.

**B.     Claims Subject to Further Review**

After carefully considering the allegations, the Court finds that the following claims survive threshold review under Section 1915A: **Count 1** against James and Adams; **Count 5** against Bowles, Hill, Hartman and Lind; and **Count 6** against Bowles, Hill, Hartman and Lind. These claims shall be dismissed against all other defendants without prejudice because no other defendants are identified in connection with these claims.

**C.     Claims Subject to Dismissal**

After carefully considering the allegations, the Court finds that the complaint fails to articulate viable claims, as follows: **Count 2** against James and Adams; **Count 3** against James, Adams, Bowles, Hill, Hartman and Lind; **Count 4** against James, Adams, Bowles, Hill, Hartman and Lind; and **Count 7** against James, Adams, Bowles, Hill, Hartman and Lind.  As discussed in more detail below, these claims shall be dismissed without prejudice.

### Count 2 –Medical Care Claim

The complaint lacks sufficient allegations to support an Eighth Amendment deliberate indifference to medical needs claim (**Count 2**) against Defendants James and Adams. Relative to this claim, the Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). Deliberate indifference involves a two-part test.  The plaintiff must show that: (1) the medical condition was objectively serious; and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.  *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).  The complaint does not satisfy the first prong of this analysis.

The Seventh Circuit has held that a medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez,* 111 F.3d at 1373.

Plaintiff does not identify any injuries that he suffered as a result of Defendants James' and Adams' use of excessive force against him. He does not allege that he asked either defendant for medical care, or that his injuries were so obvious that they would have known he needed medical attention. Plaintiff did not include a copy of any requests for treatment with the complaint or copies of any medical records. The Court is left to guess what medical condition forms the basis of this claim.

Put simply, the complaint does not suggest that Plaintiff suffered from a serious medical need, or any medical need at all, as a result of Defendants James' and Adams' use of excessive force against him. Accordingly, **Count 2** shall be dismissed without prejudice against Defendants James and Adams. And because the complaint does not name any other defendant in connection with this claim, Count 2 shall also be dismissed without prejudice against all other defendants.

**Count 3 - Due Process Claim**

Plaintiff cannot proceed with his due process claim (**Count 3**) at this time. This claim arises from the issuance of four separate, allegedly false disciplinary tickets[1] (Doc. 1, pp. 5-6). Plaintiff was found guilty of all charges without attending a disciplinary hearing. According to the final hearing summaries, Plaintiff was punished as follows:

(1) The June 20th ticket for 110-impeding or interfering with an investigation and 403-disobeying a direct order resulted in three months of C-grade and three months of segregation (Doc. 1, p. 12) ("Ticket No. 1");

(2) The June 22nd ticket for 403-disobeying a direct order resulted in two months of C-grade and two months of segregation (Doc. 1, p. 10) ("Ticket No. 2");

(3) The June 23rd ticket for 100-violent assault of any person, 104-dangerous contraband, 105-dangerous disturbances, and 307-unauthorized movement resulted in one year of C-grade, one year of segregation, revocation of one year of good conduct credit, and a "level one" transfer (Doc. 1, p. 21) ("Ticket No. 3"); and

(4) The June 23rd ticket for 205-gang or unauthorized organization activity resulted in six months of C-grade, six months of segregation, six months of no contact visits, and revocation of six months of good conduct credit (Doc. 1, p. 23) ("Ticket No. 4").

Plaintiff received a total punishment of twenty-three months in segregation, eighteen months of revoked good conduct credit, twenty-three months of C-grade status, six months of no contact visits, and a security classification upgrade. Plaintiff's efforts to appeal these decisions were unsuccessful (Doc. 1, p. 11).

He now seeks monetary damages to compensate him for a violation of his due process rights. Plaintiff's claim presents a mixed bag of issues, which require separate analysis and

---

[1] Plaintiff alleges in the complaint that he was involved in a fight in dietary on June 19, 2014 (Doc. 1, p. 5). Conspicuously absent from the complaint is any allegation explaining why these four disciplinary tickets -- particularly the third one -- are unwarranted or false.

discussion. The Court is therefore dividing its discussion of this claim into two subsections, in order to separately address Tickets No. 3 and 4 and Tickets No. 1 and 2.

### Tickets No. 3 and 4

Of the four disciplinary tickets at issue, two resulted in the revocation of good conduct credit, thereby increasing the term of Plaintiff's incarceration. Under *Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994), a prisoner cannot bring a civil rights claim for money damages based on an allegedly unconstitutional disciplinary action that includes the revocation of good conduct credit, unless the disciplinary "conviction" is overturned or expunged. For purposes of *Heck*, a disciplinary action is equivalent to a conviction and sentence.

> [I]n order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 486-87 (emphasis in original). *See also Edwards v. Balisok*, 520 U.S. 641, 649 (1997) (*Heck* bar means that a plaintiff has no claim to pursue so long as the punishment imposed remains in force); *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011); *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008).

In other words, Plaintiff cannot bring a civil rights action to challenge the revocation of his good conduct credit or other punishment because a judgment in his favor would "necessarily imply" that the disciplinary action is invalid. His civil rights claim ripens only when the disciplinary decision is reversed or otherwise invalidated. *See Simpson v. Nickel*, 450 F.3d 303, 306-07 (7th Cir. 2006). By all indications, the disciplinary decisions regarding Tickets No. 3 and

4 remain in full force.  Therefore, Plaintiff's due process claim as it relates to both of these tickets must be dismissed as *Heck*-barred.  However, the dismissal shall be without prejudice to Plaintiff raising these claims, should he wish to do so, if and when the decisions are overturned.

Plaintiff may be able to challenge these disciplinary decisions in a federal habeas corpus case, after presenting all of his claims to the Illinois courts.  This includes appealing any adverse decision to the Illinois Appellate Court and the Illinois Supreme Court.  The Illinois courts have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner.  *See* 735 ILL. COMP. STAT. 5/14–101 *et seq.*; *Turner-El v. West*, 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill. App. 1981)).  If Plaintiff successfully challenges the disciplinary actions that resulted in the loss of good conduct credits, he may then refile this civil rights claim seeking money damages.

### Tickets No. 1 and 2

What remains for consideration in support of Plaintiff's due process claim, then, are Tickets No. 1 and 2.  Neither of these tickets resulted in the loss of good conduct credits.  The total punishment imposed for both of these tickets was five months of C-grade status and five months of segregation.  No protected liberty interest arises from Plaintiff's demotion to C-grade status.  *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status or loss of commissary privileges).  Therefore, the question is whether Plaintiff's punishment with five months of segregation on false disciplinary charges supports a due process claim.

An "inmate's liberty interest in avoiding segregation is limited."  *Hardaway v. Meyerhoff, et al.*, 734 F.3d 740 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.*, 559

F.3d 693, 697 (7th Cir. 2009)). Under certain circumstances, however, an inmate punished with segregation can pursue a claim for deprivation of a liberty interest without due process of law. *See Marion*, 559 F.3d at 697-98. The circumstances surrounding Tickets No. 1 and 2 do not support a claim.

The complaint alleges that Plaintiff was denied due process when he was issued false disciplinary tickets and later found guilty at a hearing he was not allowed to attend. As a result of Ticket No. 1, he was punished with three months in segregation and three months of C-grade status. As a result of Ticket No. 2, he was punished with two months of C-grade status and two months of segregation. He was placed in conditions, which the complaint simply describes as "unsanitary" (Doc. 1, p. 5).

The fact that Defendants Bowles, Lind, and Hill[2] allegedly issued Plaintiff disciplinary tickets based on fabricated charges does not create a liberty interest. This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[, and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), aff'd, 70 F.3d 117 (7th Cir. 1995) (citations omitted).

---

[2] No other defendants were identified in connection with the false disciplinary tickets, the unfair disciplinary hearing, and/or the imposition of punishment against Plaintiff. Therefore, additional grounds exist for dismissing **Count 3** against Defendants James, Adams, and Hartman. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). Based on the allegations in the complaint and the information in the exhibits, Defendant James' and Adams' involvement in this matter is limited to the alleged use of excessive force and denial of medical treatment on June 19, 2014. Defendant Hartman's involvement is limited to a warning against filing further grievances against Pinckneyville officials.

To satisfy due process at the disciplinary hearing, an inmate facing disciplinary charges must be given: (1) advance written notice of the charges against him; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence in his defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). In addition, the decision of the adjustment committee must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994). In other words, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). Although the allegations in the complaint suggest that Plaintiff's disciplinary hearing violated the procedural safeguards described in *Wolff*, the Court's analysis of his due process claim does not end there.

Whether a protected liberty interest is implicated by Plaintiff's confinement in segregation depends on whether that confinement "imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway*, 734 F.3d at 743 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Courts must consider two factors in determining whether disciplinary segregation imposes atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured." *Id.* at 743 (citing *Marion*, 559 F.3d at 697-98) (emphasis in original)).

The Seventh Circuit has held that "relatively short terms of segregation rarely give rise to a prisoner's liberty interest" in the absence of exceptionally harsh conditions. *Id.* at 743. For these relatively short periods, inquiry into the specific conditions of confinement is

unnecessary. *See, e.g., Holly v. Woolfolk,* 415 F.3d 678, 679 (7th Cir. 2005) (2 days); *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008) (59 days); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005) (60 days); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (analyzing conditions, but noting that prisoner's segregation was "not so long as to work an atypical and significant hardship) (90 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1998) (holding that no liberty interest was implicated when considering prisoner's twelve-year sentence) (70 days).

In contrast, a liberty interest may arise from longer terms of confinement, triggering the need for further factual inquiry into the conditions of a prisoner's confinement. *See Marion*, 559 F.3d at 698 (holding that the issue of whether 240 days in disciplinary segregation would implicate protected liberty interest could not be decided at pleading stage). In such cases, the Seventh Circuit has instructed district courts to consider the *actual* conditions of confinement, in order to determine whether a liberty interest is implicated. This entails a fact-based inquiry into all of the circumstances of the prisoner's confinement. *Marion*, 559 F.3d at 699.

In this case, Plaintiff was placed in segregation for five months as a result of Tickets No. 1 and 2. Given Plaintiff's fifty-five year sentence, the term of confinement in segregation is relatively minimal. And given Plaintiff's failure to complain about a single condition in segregation that offends constitutional norms (beyond making passing reference to "unsanitary" conditions), dismissal of the due process claim, as it pertains to Tickets No. 1 and 2, is also appropriate. This dismissal shall be without prejudice.

In summary, **Count 3** shall be dismissed without prejudice against Defendants Bowles, Adams, James, Hill, Hartman, and Lind.

**Count 4 – Equal Protection Claim**

The complaint also fails to articulate a viable equal protection claim (**Count 4**). To establish a prima facie case of discrimination under the equal protection clause, a plaintiff must show that he "is a member of a protected class," that he "is otherwise similarly situated to members of the unprotected class," and that he "was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501 (7th Cir. 1993) (citing *McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989)).

Plaintiff's complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, to survive preliminary review, Plaintiff is required to "plead[ ] factual content that allows the court to draw the reasonable inference" that the defendants intentionally discriminated against a class of persons to which he belongs. *Id.* at 678. The complaint does not meet this burden.

Plaintiff simply includes reference to the claim in his list of legal claims (Doc. 1, pp. 6-7). The complaint sets forth no elements of this cause of action. The pleading is devoid of factual allegations that support the claim, such as an allegation that Plaintiff was singled out for mistreatment based on his membership in some protected class or an allegation that Plaintiff was treated differently than someone who was otherwise similarly situated. In the absence of factual allegations supporting Plaintiff's equal protection claim, the Court must dismiss this claim. Accordingly, **Count 4** shall be dismissed without prejudice against Defendants James, Adams,

Bowles, Hill, Hartman and Lind.

## Count 7 – Malicious Prosecution Claim

Plaintiff also raises a claim against defendants for malicious prosecution (**Count 7**), based on their issuance of four false disciplinary tickets again him, fabricated disciplinary hearing summaries, and his resulting punishment. The Seventh Circuit has recently clarified that "allegations that sound in malicious prosecution must be brought pursuant to state law." *Saunders-El v. Rohde*, 778 F.3d 556, 560 (7th Cir. 2015).

Where a district court has original jurisdiction over a civil action, such as a Section 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). The Court has supplemental jurisdiction over this claim and will therefore consider its merits.

The elements of an Illinois state law claim for malicious prosecution are: (1) the defendants commenced judicial proceedings; (2) for which there was no probable cause; (3) the proceedings were instituted or continued maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) the plaintiff sustained an injury. *See Saunders-El*, 778 F.3d 556 (citing *Sneed v. Rybicki*, 146 F.3d 478, 480-81 (7th Cir. 1998)).

This claim is subject to dismissal because the disciplinary proceedings were *not* terminated in the plaintiff's favor. In fact, he was found guilty of the charges in all four disciplinary tickets. His efforts to appeal the decisions have been unsuccessful (Doc. 1, p. 11).

**Count 7** shall be dismissed without prejudice on this basis.

### Pending Motion

Plaintiff has filed a motion for appointment of counsel (Doc. 3), which shall be **REFEERRED** to United States Magistrate Judge for a decision.

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 2, 3, 4,** and **7** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**AS TO COUNTS 1, 5,** and **6**, the Clerk of Court shall prepare for **DEFENDANTS BOWLES, ADAMS, JAMES, HILL, HARTMAN,** and **LIND**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is

entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings, including a decision on Plaintiff's motion to appoint counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Frazier** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 13, 2015**

s/ STACI M. YANDLE
**U.S. District Judge**
