IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT HOSKINS, B02683, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-00280-SMY-RJD |
| | ) | |
| DUSTIN BOWLES, | ) | |
| CHAD ADAMS, | ) | |
| GREG JAMES, | ) | |
| SCOTT A. HILL, | ) | |
| MARK L. HARTMAN and | ) | |
| BART A. LIND, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Robert Hoskins, an inmate in the Illinois Department of Corrections ("IDOC") prison system, filed this civil rights action on March 12, 2015 against various prison officials at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 1). According to the Complaint, on June 19, 2014, Hoskins was involved in a physical altercation with a fellow inmate in the Pinckneyville dietary unit (chow hall). After the altercation, Hoskins was in the process of being transferred to the segregation unit when he was assaulted by Defendants Chad Adams and Greg James. Shortly thereafter, Hoskins filed an emergency grievance detailing the assault. Over the next several days, Defendants Dustin Bowles, Scott Hill, Mark Hartman and Bart Lind conspired to violate his constitutional rights and to issue him falsified disciplinary charges. As a result, Hoskins was punished with the revocation of privileges and good time credits. He was also transferred from Pinckneyville, a medium security facility, to Menard Correctional Center, a maximum security facility.

1

Hoskins' Complaint was screened pursuant to 28 U.S.C. § 1915A. (Doc. 7). In the Screening Order, he was found to have articulated three colorable claims. In **Count 1**, Hoskins stated an Eighth Amendment excessive force claim against Defendants James and Adams. In **Count 5**, Hoskins stated a claim that Defendants Bowles, Hill, Hartman and Lind conspired to deprive him of his constitutional rights under the First, Eighth and Fourteenth Amendments. In **Count 6**, Hoskins stated a First Amendment retaliation claim against Defendants Bowles, Hill, Hartman and Lind. The remaining counts (2, 3, 4 and 7) were dismissed for failure to state a claim.

Defendants Bowles, Hill, Hartman and Lind now seek summary judgment as to Counts 5 and 6. (Doc. 77). The motion is opposed. (Doc. 80). For the following reasons, the motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

The following facts were obtained from plaintiff's deposition unless otherwise noted. Plaintiff Robert Hoskins has been incarcerated with the IDOC since 1991. (Hoskins deposition, Doc. 78-1, p. 8). The incidents that give rise to this litigation began on June 19, 2014 at Pinckneyville. *Id*. at p. 10. On that date, Hoskins was involved in a fight with a fellow inmate in the prison chow hall. *Id*. at p. 10. The fight occurred during the 3 P.M. to 11 P.M. shift. *Id*. at p. 10. After prison officials broke up the fight, Hoskins was handcuffed and taken to the Pinckneyville Health Care Unit by Defendant James. *Id*. at p. 10. James was the Internal Affairs Officer working that shift. *Id.* at p. 18. Hoskins declined medical assistance and James escorted him out of the Health Care Unit to the segregation unit. *Id*. at p. 20.

As Hoskins and James left the Health Care Unit, they were stopped by Defendant Adams. *Id*. at p. 20. Adams asked Hoskins "What's your f*ckin' problem?" and asked him about his

2

gang affiliations. *Id*. at p. 20. Hoskins refused to answer. *Id*. at p. 20. At that point, Adams and James began punching Hoskins. *Id*. at p. 24. Hoskins then fell to the ground, and Adams told James to "[g]et this little bitch out of my face." *Id*. at p. 24. As Adams walked away, James picked Hoskins up. *Id*. at p. 27. The two then proceeded to walk towards the segregation unit. *Id*. at p. 27. At the segregation unit, James placed Hoskins in Cell 54 in the "C wing." *Id*. at p. 33. Hoskins then filed an emergency grievance that described the assault by Adams and James. *Id*. at p. 34.

The next morning, Defendant Hartman stopped by Hoskins' cell. *Id*. at p. 35. Hartman was the counselor for the Pinckneyville segregation unit. *Id*. at p. 38. Hartman told Hoskins that he should not file any more grievances against Pinckneyville staff members and that the grievances "don't work like that" in his cell house. *Id*. at p. 38. Hoskins' "Cumulative Counseling Summary," an IDOC form that lists inmates' interactions with counselors, states that on June 20, 2014, at 9:28 A.M., Correctional Counselor Mark L. Hartman spoke to Hoskins at his cell in the segregation unit. (Doc. 1, p. 9). Hartman's notes from the interaction state; "Seg. contact. DCA form initiated. States he fears staff will harm him. Internal Affairs notified. Given grievances." *Id*.

Later that day, Defendant Bowles stopped by Hoskins' cell. *Id*. at p. 39. Bowles worked in the Pinckneyville Internal Affairs Office. *Id*. at p. 39. Bowles told Hoskins that his grievance was a "game changer." *Id*. The record is not quite clear as to what happened next, but Hoskins later received a disciplinary report for "#110 - Impeding or Interfering with an investigation" and "#403 – Disobeying a Direct Order." (IDOC Offender Disciplinary Report, Doc. 1, p. 15). The report states that at approximately 12:30 P.M., the Internal Affairs Unit arrived at Hoskins' cell to interview him about the previous day's altercation in the chow hall. *Id*. The report goes on to

3

state that the Wing Officer, Officer Wangler, gave Hoskins three direct orders to come to the front of the cell and cuff up, but Hoskins refused. *Id*. However, Hoskins testified at his deposition that this exchange with Officer Wangler never occurred. (Doc. 78-1, p. 40). On June 21, 2014, prison officials served Hoskins with the disciplinary report for the failure to cuff up incident from the previous day. *Id*. at p. 41.

The following day, Defendant Hill stopped by Hoskins' cell. *Id*. at p. 41. Hill asked Hoskins "what was up" with the grievance that Hoskins filed. *Id*. at p. 41. Hoskins backed away from the cell door and refused to answer. *Id*. at p. 41. Hill then left. *Id*. at p. 41. Later that day, Hill issued Hoskins a disciplinary report for "403 Disobeying a Direct Order." (Doc. 1, p. 16). The disciplinary report states that at approximately 1:00 P.M. on June 22, 2014, Hill told Hoskins to "pack his property" so that he could be transferred but that Hoskins told Hill, "I am not moving" and refused to move despite three direct orders. *Id*.

On the morning of June 23, 2014, Hoskins found the previous day's disciplinary report from Hill under his cell door. (Doc. 78-1, p. 45). Later that day, Bowles arrived at Hoskins' cell to drop off two more disciplinary reports. *Id*. One of the disciplinary reports, authored by Bowles, charged Hoskins with "#100 – Violent Assault of any Person, #104 – Dangerous Contraband, [and] #307 Unauthorized Movement" for the incident in the chow hall. (Doc. 1, p. 17). The other disciplinary report, authored by Defendant Lind, charged Hoskins with "#205 Security Threat Group or Unauthorized Organizational Activity." *Id*. at p. 19. This disciplinary report also involved the incident in the chow hall, but Hoskins received the additional charge because the fight was gang related. *Id*. at pp. 19-20.

Hoskins signed the reports to acknowledge receipt. (Doc. 78-1, p. 45). Bowles then told Hoskins to "pack it up" and that he was being "shipped" out to a different facility. *Id*. After he

packed his belongings, Hoskins was handcuffed and escorted to the "Bureau of Identification" office for processing. *Id*. Prison officials then placed Hoskins in an IDOC van and transferred him to Menard Correctional Center. *Id*. at p. 49.

Hoskins received a total of four disciplinary reports for the incidents that occurred from June 19, 2014 through June 22, 2014. IDOC regulations mandate that an inmate receive an adjustment committee hearing after receiving a disciplinary report. Ill. Admin. Code tit. 20, § 504.80. During the hearing, the inmate is entitled to present evidence in his defense as to the disciplinary charge. *Id*. The adjustment committee then makes a finding as to guilt or innocence, and decides whether to impose disciplinary action. *Id*.

Hoskins received adjustment committee "Final Summary Reports" for the four disciplinary reports, and was found guilty on all four. (*See* Summary Reports for June 19, 2014, incident at Doc.1, pp. 21-24; Summary Report for June 20, 2014, incident at Doc. 1, p. 12; Summary Report for June 22, 2014, incident at Doc. 1, p. 10). For the May 20 and May 22 incidents, Hoskins was penalized with three months of segregation and two months of segregation, respectively. (Doc. 1, pp. 12, 10). For the fight in the chow hall, he received one year of segregation, a one year loss of good time credit and a "Level 1 Transfer." (Doc. 1, p. 21). Because the fight was gang related, Hoskins received six months of segregation and a loss of six months of good time credit. (Doc. 1, p. 23).

Hoskins appears to have exhausted administrative remedies in January 2015. Defendants Bowles, Hill, Hartman and Lind now seek summary judgment, arguing that Hoskins' conspiracy claim is unnecessary and that Hoskins' has not presented evidence of a conspiracy. They further argue that any claims arising out of the disciplinary reports issued on June 23, 2014 (the

disciplinary reports issued for the fight and gang activity) are barred under *Heck v. Humphrey* and that Hoskins has presented insufficient evidence to support the remaining retaliation claims.

## DISCUSSION

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." At the summary judgment stage, the Court must view all facts and reasonable inferences "in the light most favorable to the party opposing the motion" *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962) and shall "neither come to a conclusion on factual disputes nor weigh conflicting evidence." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). "A party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion". *Id*. (*quoting Smith v. Severn*, 129 F.3d 419, 427 (7th Cir.1997)).

Here, the defendants present several arguments as to why summary judgment is appropriate, including that Hoskins' claims are barred, at least in part, under *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). In *Heck*, the Supreme Court held that an inmate plaintiff cannot seek "damages in a § 1983 suit … [if] a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence [.]" *Id.* at 487, 114 S. Ct. at 2372.[1] In other words, "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments [.]" *Id*. at 486, 114 S. Ct. at 2372. The *Heck* bar also

---

[1] The *Heck* bar does not apply if the plaintiff can demonstrate "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486–87, 114 S. Ct. at 2372.

applies when the plaintiff has been subject to the revocation of prison good time credits. See, *Edwards v. Balisok*, 520 U.S. 641, 648, 117 S. Ct. 1584, 1589, 137 L. Ed. 2d 906 (1997).

In this case, Hoskins' two disciplinary reports for the June 19, 2014 fight in the chow hall resulted in the revocation of good time credits. Hoskins lost one year of good time credit for the fight (Doc. 1, p. 21) and he lost six months of good time credit because the fight was gang related. (Doc. 1, p. 23). There is no evidence that these two disciplinary reports were expunged, invalidated or reversed through the habeas corpus process. The *Heck* bar is therefore applicable and Hoskins is precluded from proceeding on a claim that would necessarily imply the invalidity of either of the two disciplinary reports. As such, any argument that prison officials unlawfully issued those reports must be carved out of Hoskins' claims. However, the *Heck* bar does not affect the disciplinary reports issued for disobeying a direct order that were based on the events in Hoskins' cell on June 20, 2014 and June 22, 2014.

Next, Defendants argue that summary judgment is warranted on Hoskins' conspiracy claim. They assert that the claim is an unnecessary, superfluous addition to the other claims and that Hoskins has failed to provide evidence of a "meeting of the minds" to support a conspiracy. The defendants are correct. The purpose of a conspiracy claim "is to permit recovery from a private actor who has conspired with state actors." *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009). The Seventh Circuit has noted that when all of the defendants are state actors, a conspiracy claim "does not add anything except needless complexity." *Id*. Moreover, during his deposition, Hoskins admitted that he never saw the defendants speaking to one another. Additionally, he has presented no evidence that there was in fact a meeting of the minds. Therefore, Defendants will be granted summary judgment as to the conspiracy claim.

Hoskins' remaining claim is that he was retaliated against by Bowles, Hill, Hartman and Lind for filing the emergency grievance detailing the excessive force incident. Although prisoners' constitutional rights are limited due to the fact of their incarceration, they do have a First Amendment right to file non-frivolous prison grievances. *See Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("Prisoners are entitled to utilize available grievance procedures without threat of recrimination").[2] In order to pursue his First Amendment retaliation claim, Hoskins must show that: "1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quote omitted).

Defendants contend that Hartman is entitled to summary judgment because Hoskins has presented insufficient information to support a retaliation claim against him. Hoskins claims that after he filed a grievance about being assaulted by two correctional officers on June 19, 2014, Hartman told him that he should not file any more grievances and that grievances "don't work like that" in his cell house. When this sequence of events is viewed in a light most favorable to Hoskins, a jury could reasonably conclude that Hartman threatened Hoskins and that Hoskins would face potential recrimination if he pursued the issue. Thus, Hoskins has presented sufficient evidence that Hartman's threat constituted "a deprivation that would likely deter First Amendment activity in the future," notwithstanding the fact that Hoskins subsequently filed grievances and this lawsuit. Summary judgment shall be denied as to Hartman.

Defendant Hill also seeks summary judgment on Hoskins' retaliation claim. Hoskins asserts that Hill fabricated the June 22, 2014, disciplinary report. The events that occurred at

---

[2] The plaintiff in the instant action also filed *Hoskins v. Lenear*, 395 F.3d 372 (7th Cir. 2005).

Hoskins' cell that day are murky, but Hoskins claims that Hill falsified the report not long after the two discussed Hoskins' excessive force grievance. Based on the facts in the record, a reasonable jury could conclude that Hill falsified a disciplinary report in a retaliatory manner.

Defendants argue that Hoskins did not suffer a deprivation because he was already in segregation, and because other decision makers ultimately decided to impose punishment due to the disciplinary report. This argument fails because Hoskins received an additional two months in segregation because of the disciplinary report. (*See* Doc. 1, p. 10). Moreover, even though the adjustment committee (and not Hill) ultimately decided whether to impose punishment, the issuance of the disciplinary report initiated the sequence of events that resulted in the punishment. Whether Hill's actions resulted in a deprivation that would likely deter First Amendment activity in the future is a question of fact for the jury's determination. For these same reasons, Hoskins will also be permitted to proceed on his retaliation claim against Bowles arising out of the June 20, 2014 disciplinary report.

However, defendant Lind is entitled to summary judgment. Hoskins admitted at his deposition that he never met Lind. (Doc. 78-1, p. 54). The extent of Lind's involvement appears to be that he drafted the disciplinary report against Hoskins that raised the gang activity charge. Because Lind was not engaged in any other allegedly unlawful acts, and claims arising out of that disciplinary report are barred pursuant to *Heck*, Lind will be granted summary judgment.

Finally, Defendants contend that they are entitled to qualified immunity for the claims Hoskins asserts against them. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (internal quote omitted). The Supreme Court has established a two

part test to determine whether a defendant is entitled to qualified immunity. The first question is; "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). The second question is: was the law clearly established when the defendant's alleged unlawful conduct occurred? *Id*. The Court's previous analysis regarding potential First Amendment violations affirmatively answers the first question. As to the second prong, well before the events in this lawsuit, it was clearly established that "[p]risoners are entitled to utilize available grievance procedures without threat of recrimination." *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). As such, the defendants are not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** on Count 5 as to Defendants Bowles, Hill, Hartman and Lind and on Count 6 as to Defendant Lind only. Further, pursuant to *Heck v. Humphrey*, Plaintiff Robert Hoskins is precluded from presenting evidence that would imply the invalidity of the disciplinary reports pertaining to the June 19, 2014 fight in the Pinckneyville chow hall.

**IT IS SO ORDERED.**

**DATED: May 30, 2017**

*s/ Staci M. Yandle*
**Staci M. Yandle**
**United States District Judge**