IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROBERT HOSKINS, )
)
        Plaintiff, )
)
vs. ) Case No. 3:15-CV-280-SMY-RJD
)
DUSTIN BOWLES, et al., )
)
        Defendants. )

# MEMORANDUM AND ORDER

Pending before the Court is Plaintiff's Motion *in Limine* Number 7 (Doc. 120) which the Court took under advisement at the Final Pretrial Conference on January 24, 2018. Plaintiff's Motion *in Limine* Number 7 requests "an adverse instruction to the jury requiring the jury to presume that the grievance recounted the details of the assault and was intercepted by the guards and/or destroyed." (Doc. 120 at 7). Alternatively, Plaintiff requests a "spoliation charge" permitting, but not requiring, the jury to make that presumption. (*Id.*). As set forth below, the motion is **DENIED**.

Plaintiff Robert Hoskins, an IDOC inmate, filed this § 1983 action on March 12, 2015 against various prison officials at Pinckneyville Correctional Center. (Doc. 1).[1] On June 19, 2014, Hoskins was involved in a physical altercation with a fellow inmate in the Pinckneyville mess hall. After the altercation, Hoskins was in the process of being transferred to the segregation unit when he was allegedly beaten by Defendants Chad Adams and Greg James. Hoskins alleges that on July 20, 2014, he filed an emergency grievance detailing the assault (the "Emergency Grievance").

---

[1] All factual allegations are drawn from the Complaint, unless otherwise noted.

Over the next several days, Hoskins was allegedly issued falsified disciplinary charges due, at least in part, to his filing of the Emergency Grievance. He alleges that Hartman, Hill and Bowles each spoke to him regarding the Emergency Grievance. As a result of the disciplinary charges, Hoskins was punished with additional time in segregation, the revocation of privileges and good time credits, and was transferred from Pinckneyville to Menard Correctional Center..

In their Answer, Defendants claim lack of sufficient knowledge as to whether the Emergency Grievance was filed or not. (Doc. 21 at 7). Hartman, a correctional counselor, states that he did speak to Hoskins in his cell and gave him grievance forms. Defendants deny that that the disciplinary charges were false or that they had anything to do with a grievance.

Hoskins' "Cumulative Counseling Summary," an IDOC form that lists inmates' interactions with counselors, states that on June 20, 2014, at 9:28 A.M., Correctional Counselor Mark L. Hartman spoke to Hoskins at his cell in the segregation unit. (Doc. 1 at 9). Hartman's notes from the interaction state: "Seg. contact. DCA form initiated. States he fears staff will harm him. Internal Affairs notified. Given grievances." (*Id.*).

The Emergency Grievance was not produced by Defendants in discovery. Plaintiff filed a Motion to Compel, requesting that the Court either order a search to find it or impose sanctions in the form of a Rule 37 spoliation instruction. (Doc. 115). Plaintiff cites to the "Given grievances" language in the Cumulative Counseling Summary and contrasts it with notations on other dates which read "asked for grievance- given," as support for the existence of the Emergency Grievance. (Doc. 1 at 9). ("When read in conjunction, it appears that Mr. Hoskins did give a grievance to Mr. Hartman on the date in question.") (Doc. 115 at 2). It should be noted that these other entries appear to have been made by a different correctional officer, Cliff W. Vanzandt. (Doc. 1 at 9). Further, Defendants claim that they have no record of the

Emergency Grievance ever being filed. (Doc. 116). Magistrate Judge Reona M. Daly denied the motion, finding that "it would be an exercise in futility to order counsel for Defendants to again look for said grievance. The Court further finds that the issue of spoliation is better suited for a pre-trial motion in limine." (Doc. 117).

Plaintiff again requests either an adverse-inference instruction or a spoliation instruction regarding the alleged failure to produce or preserve the Emergency Grievance. A court's authority to sanction a party for spoliation of evidence is both inherent and statutory. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50–51 (1991); *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993). If spoliation of evidence violates a court order or affects the court's discovery schedule, sanctions may be imposed under Rule 37. See Fed. R. Civ. P. 37(b)(2); *Chambers*, 501 U.S. at 50–51. The court's inherent authority is a power which is necessary "to fashion an appropriate sanction for conduct which abuses the judicial process," *Chambers*, 501 U.S. at 44–45. This authority "is based on the Court's power to manage and ensure the expeditious resolution of cases on their dockets and is not limited to discovery violations." *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *8 (N.D. Ill. Aug. 18, 2005).

Plaintiff first asks for an adverse-inference instruction "requiring the jury to presume that the grievance recounted the details of the assault and was intercepted by the guards and/or destroyed." (Doc 120 at 7). In order to merit an adverse-inference instruction, Plaintiff must demonstrate (a) that the document contained information adverse to Defendants' case, and (b) that Defendants "intentionally destroyed the documents in bad faith." *Norman-Nunnery v. Madison Area Tech. College*, 625 F.3d 422, 428 (7th Cir. 2010); *see also Everett v. Cook County*, 655 F.3d 723, 727 (7th Cir. 2011). "Bad faith" in this context means that the evidence at issue was "destroyed for the purpose of hiding adverse information." *Norman-Nunnery* at 428.

3

Alternatively, Plaintiff requests a permissive spoliation instruction "which does not require a showing of bad faith," presumably based on a theory that Defendants had a duty to preserve the Emergency Grievance and failed to do so. "A party has a duty to preserve evidence over which it has control and reasonably knows or could foresee would be material to a potential legal action." *Bryant v. Gardner*, 587 F. Supp. 2d 951, 967–68 (N.D. Ill. 2008). As to the issue of "control," "a party need not have actual possession of the documents to be deemed in control of them; rather the test is whether the party has a legal right to obtain them." *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004) (citing *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977))

Here, there is no evidence establishing that the Emergency Grievance was ever filed to merit either of the requested sanctions. Plaintiff alleges that he submitted it to Defendant Hartman and discussed it with several other defendants. Defendant Hartman denies getting a grievance from Hoskins, and the other defendants deny that the alleged conversations involved the Emergency Grievance. The only support for Plaintiff's position is Counsel's interpretation of the wording in different counseling-log entries submitted by different staff members. But Counsel's interpretation is insufficient to meet the requirements for an adverse-inference instruction. First, there is the implied condition that the document or object which is missing existed in the first place. This is an issue of significant dispute and a matter for the jury. Second, the document must have been intentionally intercepted or destroyed. Plaintiff provides no evidence to suggest that the inability to find the Emergency Grievance, if it was filed, is due to the intentional acts of any of the defendants. Finally, Plaintiff presents no evidence that the destruction, if any, was for the purpose of concealing adverse information. An adverse-inference instruction is a significant sanction for a court to impose, and it is inappropriate on the facts as

developed thus far.

Plaintiff's alternative request for a permissive instruction for failure to preserve the Emergency Grievance is similarly inappropriate. It also requires an assumption that the Emergency Grievance was filed before it was lost or destroyed. Again, this assumption is not justified based on the evidence in the record.

Plaintiff's Motion *in Limine* 7 is therefore **DENIED**.

**IT IS SO ORDERED.**

**DATED: January 31, 2018**

<u>**s/ Staci M. Yandle**</u>
**STACI M. YANDLE**
**United States District Judge**